and all of the United States citizens, its territory, I believe also our military bases. And so because this is a very broad, I believe, statute or should be interpreted very broadly because of the remedial status of this legislation, if we adopt respondent's narrow construction, we will run counter to legislative intent. The briefs talk a lot about what is meant by employee and how you determine what that meaning is, where the statute doesn't have an express definition. But we're not just talking about employee, the question of what is an employee in a relational sense. We're talking about the language of the statute that says an employee of the United States. Judge Brueging said that was a term of art. Employee of the United States means something specific and something special, and you turn to Title V to find out what that means. Why is that wrong? Well, we disagreed with Judge Brueging because Title V, in and of itself, states that the it applies to this title only, Title V. And there is nothing that indicated that it applies to Title 42, which is the program and the title that we are interpreting here today. And, in fact, it is not a term of art. We are not looking. Title V specifically deals with employees that are dealing or looking for various benefits that they would receive as civil servants, and we're not doing that. We're here to interpret what an employee of the United States is for purposes of the vaccine program. And I believe when you look at the Section 3, you'll see a broad picture of what Congress and the vaccine manufacturers intended. Look at Roman numeral 1. All you have to be is in the United States, and you receive a vaccine. And then it's come one, come all. Everybody is eligible so long as they come within the three-year statute of limitations. That's a very broad reading, and I think that is completely in alignment with legislative intent. Then you go to Roman numeral 2, which is where we're focusing, Roman numeral 2 and Roman numeral 3. In Roman numeral 2, we are dealing with United States citizens who receive their vaccines outside of the United States. And then we have the first term that you are a member of the Armed Forces. Now, I've briefed whether or not Mr. Griffin can be, for vaccine purposes only, a member of the Armed Forces. But you go to the next two words, which I believe Special Master Millman and Judge Brugge, Inc., really didn't look at, and that is, or otherwise. So you're a United States citizen who receives your vaccine outside of the United States. You're a member of the Armed Forces, or otherwise. So what do we have here? Or otherwise is, I believe, language of expansion. It is not this or that. It's not members of the Armed Forces or an employee of the United States. Congress knows what the word or means, so we have to give meaning to the words or otherwise. And I believe that gives us a minimum ambiguity, which then leads us back to we have to follow legislative intent. But don't you think the otherwise simply means as opposed to the Armed Forces? I mean, you can say a military person is an employee of the United States. It isn't the most natural reading of that or otherwise language. You're a member of the Armed Forces or otherwise an employee of the United States, meaning not just Armed Forces. Other employees of the U.S. are also considered eligible. If they intended that interpretation, and I believe there's ambiguity here, then they would have just used or, if it was this or that. But they didn't. They used this language of expansion, which to me, we would interpret this as more of a class of people. Who are this class of people? Citizens of the United States. Members of the Armed Forces. And then the class of, I would argue, would be those people who are working with the United States. Otherwise, it doesn't make sense. It's completely dissonant with legislative intent to absolutely exclude someone who was working side by side with our military who received their vaccination pursuant to Department of Defense requirements. As well, he's at a United States facility, Army facility in Afghanistan. It flies our American flag. And it would be dissonant, I would propose, to completely exclude him as well as a complete class of other United States citizens who are working side by side with our United States military. So I think we have to give meaning to or otherwise. And I believe it's a class of United States citizens who are working with the United States government to do that. Does this mean that it would apply to anyone working for a company that was under contract with the government anywhere in the world? Say, you know, an engineer with GE working up in Antarctica for the National Oceanographic Administration or something of that sort? If they were a United States citizen, I would agree with that. So the vaccine special master would not only be making judgments about vaccines and things of that sort, but also making judgments about the common law applicability of employment law? It's in the alternative, Your Honor. I believe that if we do not see this as a class of people, United States citizens working with the government, the United States government, then alternatively, yes, we would need, pursuant to the United States Supreme Court case, we would have to give meaning to employee, which is not defined. And how the United States Supreme Court says we do that is if it's not defined, they believe or state that Congress intended that the court in fact do this agency principle analysis to determine whether or not someone is an employee of the United States. Respondent had argued that we should try to make this simpler. And when I re-looked at this statute, I started saying, okay, no one yet has looked at what does or otherwise mean? And it's very difficult because there's not many cases that actually define or give meaning to the words or otherwise. I only found a couple. I think there was one United States Supreme Court case called DOCH, G-O-O-C-H, a long time ago. I think it was in the 1930s or something. And they discussed wording of, you know, when a person is a person, they are a policeman who's been captured against or kidnapped against his will for ransom, reward, or otherwise. And again, this was kind of words of expansion. So, and it, they kind of found that it should be a class of people. And so that's what we're arguing here today. You're in your rebuttal time. Would you like to save it? Yes. Okay. Then we should hear from the government. Thank you. Ms. England. Good morning. My name is Laura England and I represent the respondent, the Secretary of Health and Human Services. May it please the Court, the issue in this case is whether at the time of this vaccination petitioner was serving abroad as an employee of the United States as required by the Vaccine Act. The Special Master and the Court of Federal Claims correctly determined that he was not. It is undisputed that petitioner was an employee of Floor, a private company that provided services to the United States Army pursuant to a contract. There was no formal employment relationship between the petitioner and the United States. Nothing in the text of the act indicates that Congress intended for it to apply to contractors. The text does not explicitly include the word contractors and Congress used the statutory language, not simply employee, but employee of the United States. And our argument is that given that... Well, it couldn't just say employee, right? Because anyone who has been employed, even in a foreign government by a foreign agency or a foreign company, would then qualify. So of course it had to specify employee of the United States. I don't understand that argument. Well, it could say or otherwise work on behalf of the United States if it wanted to. I mean there are ways that it could have phrased it to make it clear that the intention was to be broad. But it didn't use the term employee of the United States. And hasn't the Supreme Court indicated that when you're trying to determine whether someone is an employee of any corporation or the government or anyone else that there's what, a 16-factor test that you're supposed to look to? Well, the Court has said in a couple of cases that when Congress uses the word employee... by the common law that it probably intended the definition used in the common law. But the cases where it applied that definition all regulated the employment relationship. So it makes sense, given that this is such a very complicated test to apply. It involves at least 16 factors, if not more. It makes sense in those cases because you're trying to look at the economic realities of those relationships to go to the trouble of applying that test. But our position is here the Act intended to adopt a bright-line rule. This is a preliminary matter and it shouldn't be read to require extensive fact-finding and potentially discovery and a fact-hearing. Moreover, if you look at the other two provisions that are in this section, those provisions also adopt bright-line rules. Roman numeral one is based on location. You're eligible to bring a claim if you receive the vaccine within the territory of the United States or its territories. And Roman numeral three is based on time. You're eligible if you return to the United States within six months. And so we think it makes sense to interpret section two as adopting a bright-line rule as well. What about the argument that Title V itself says this shall only apply to Title V? I think, I mean, the question for this Court is to try to determine what Congress meant when it passed the Vaccine Act and when it used the term employee of the United States. And given that that relationship between the United States and its employees is such a highly regulated relationship and that it's not subject to common law and it's not subject to contract law, that I think it's reasonable for the Court to assume that Congress meant to refer to this class of employees that are governed by this extensive regulatory framework. So obviously it would be a much easier case if Congress had defined the term, but it didn't, and so we're left to try to glean Congress's intent from the clues that it left. We also argue that applying the bright-line rule furthers the purposes of the Act. While the Act is intended to be generous, it's also intended to be quick and easy, efficient, certain, and fair. The test we propose is quick and easy because it's easy to apply and it doesn't require fact-finding. Just to be clear, I have had a lot of these cases, and at least the ones that come before us are often cases that are off-table cases. Right. I don't think the words quick and easy could ever possibly be applied to those cases. And again... Would you agree with that? I do agree with that. So basically the statute has table cases, which I think are probably generally quickly and easily administered, and we don't see those. But at least the great volume of cases that we end up seeing are more often the off-table cases, and those are voluminous and extensive with experts and discovery and all kinds of things that Congress didn't contemplate in all circumstances this being quick and easy, did they? I agree with that, that the cases can pose very difficult issues with regard to causation, but for that very reason that the cases tend to be complicated when you get to the causation issues, there's no need to adopt a standard for this preliminary matter that is equally complicated and requires fact-finding before you even get to the issue of whether a person has a claim. How often do you think this is going to come up? I mean, obviously we're loathe to introduce a huge ambiguity into administrative application of a benefit like this, but how often? I mean, how many cases are you aware of where you have contractors receiving vaccinations abroad that are submitting claims? Well, this is only the second reported case that I'm aware of. I don't know if that's because people just aren't bringing claims because they don't understand themselves to be eligible to bring claims. So, obviously, if the court interpreted this more broadly, we would expect to see a lot more claims. He received the vaccine at Bagram Air Force Base. Yes. If he had been told to report to the embassy, if given a shot, would he then be covered? No, I don't think the location, other than within the United States. Well, you said territory of the United States. I am not sure if that's true. Well, the vaccine uses the term within the United States or its trust territories. I'm not aware that the embassy is considered a trust territory. Well, isn't the embassy actually considered U.S. soil? Yes, I'm sorry. I'm not familiar with exactly what sovereign territory of the United States is. I know that Bagram Air Force Base is not, and there's not an embassy. I mean, there is in Kabul, but that's a different location. So, in addition to serving the interests of easy administration, this test also promotes the interest of certainty because it's easy to understand and it gives petitioners notice about whether they have a claim. We also think it serves the interest in fairness because it treats like cases alike. One of the goals of the Act is to make sure that similarly situated petitioners are treated the same, and adopting the common law standard to interpret this provision would create a risk that people are treated differently based on relatively minor details of their employment relationship. Isn't it true that the Act itself, in its overall posture, is expansive? It doesn't restrict who among U.S. citizens is covered. Everybody in the United States is covered. In general, it seems like a very expansive arrangement intended to accomplish a salutary goal and to say, well, let's be narrow in our interpretation. It sounds like it's contrary to the Act. Well, within the United States, definitely the Act is expansive. It applies to everyone who receives a covered vaccine. But it's important to note that the vaccine program is funded by an excise tax on vaccines and that tax applies to vaccines filled within the United States. And so, given that there is a fundamental quid pro quo at the heart of the Act, it makes sense to say that if you're getting the vaccine for which the excise tax was paid, you get the benefit of the vaccine program. That's not necessarily true if you get a vaccine outside the United States because that vaccine might not have been subject to the excise tax. So I think... Well, that seems like it's not a basis upon which we could or should decide because the statute clearly contemplates all members of the armed forces or employees of the U.S. who are abroad receiving vaccines. And if you're saying that somehow a determination ought to be made on whether an excise tax was or was not paid on this particular dose before administered, it doesn't seem to be consistent with the idea that Congress intended applications to occur abroad that would be subject to this. No, I'm not arguing that Congress intended for the court to make that kind of inquiry. But I am arguing that that is a reason to interpret these two provisions that apply outside the United States narrowly, that Congress adopted narrower restrictions on those vaccinations because they wanted to avoid an issue of free riders. So you seem to be making this argument up out of whole cloth. I have seen no evidence either in the statute or in any legislative history to suggest what you just said. Do you have some support in something other than your idea for the notion that Congress intended to create a narrow limit for administrations outside the U.S. because of this excise tax? There's nothing in the legislative history. It's just based on the structure of the Act and then particularly if you look at Provision 3 of this section. But I don't see anything in the Act that says anything about the excise tax that there is some attempt to link the excise tax and whether it was in fact paid to someone's availability for remedy. Do you see anything in the Act that does that? Nothing in the Act refers to the excise tax? There's nothing in the Act that refers to the excise tax. There's nothing in the legislative history that refers to it. But you think we should nonetheless construe a section of the Act narrowly because in your view Congress would have intended it because it was linked to the excise tax. Well, as I was going to say that Section 3 is limited to vaccines that were manufactured by a manufacturer that is located in the United States. And so that is a rough proxy for whether that manufacturer is paying into the vaccine program. And so that is some support for the fact that Congress was trying to approximate. Or do you think rather it is support for the idea that Congress was trying to create a system that would avoid subjecting those manufacturers to lawsuits in the United States? Isn't that actually the whole point of the vaccine fund is to avoid those pharmaceutical manufacturers in the United States from being sued so that they wouldn't stop making vaccines? Right, and at the heart of that is the quid pro quo which is that in return for this shield from liability you pay an excise tax. And so I do think that those two go hand in hand. In addition, we think this interpretation is fair because contract workers would still have a remedy under the Act which is to return to the United States within six months. What do you mean they have a remedy under the Act? Explain that to me. So someone like Petitioner, if he had returned to the United States within six months he still could bring a claim. So if he returned to the U.S. within six months of what? Of his vaccination. Receiving the vaccination? Yes. Then he would be eligible to bring a claim? Under Prompt 3. And so that is a way that Congress was a little bit more expansive in providing recovery. And this gentleman doesn't qualify? Based on the record, he has never returned to the United States since his vaccination. Even if the common law standard definition of employee applies the Special Master correctly determined that the Petitioner was not employed. What if he died from the vaccine instantly? When his body is returned to the U.S. would he then have a claim under 3? That would be a much harder case if it was literally impossible for him to return to the United States. What if he was severely injured by the vaccine as occasionally people are such that he needed to be hospitalized and there was a concern about transporting him back to the United States? Again, that would be a more difficult case but here Petitioner was able to travel. He traveled to Dubai and he traveled to the Philippines and so within 6 months after his vaccination. So there is nothing in the record that suggests he was not physically able to return to the United States. What does the record suggest about when he realized that the injuries he claims to have suffered were linked to the vaccine? I believe that he was diagnosed with GBS in June of 2012 and the vaccination was February 1st and the records are sparse about what the doctors told him about what caused it but certainly a Google search would have told him that it could be linked to the vaccine at that time. Would you suggest then that the 6 month period ought to be governed by a new or should have known standard? I mean if you had not known and had no reason to know that the illness you suffered was the cause of the vaccine and therefore didn't return to the U.S. to make sure you could fall within this I mean is there a known or should have known standard? I don't think so. I think it's an objective test that simply did you return or did you not return. So as I was saying even if the common law definition of employee applies the court, the special master correctly determined that Tishner was not an employee under that definition. That test requires the courts to analyze a number of different factors. I know and that kind of really concerned me. It feels like a really big factual sort of question. Doesn't it to you? It is a factual question. And what was the proceeding under which the special master resolved it? It was a summary judgment motion. Hmm. Did that cause you any pause? Well Tishner had ample A 16-factor fact question. Tishner had ample opportunities Summary judgment. Well there are if you look at the D.C. circuit cases that Tishner relies on a lot of those cases are decided on summary judgment as well. So there is precedent for this issue being decided on summary judgment. But again I'm almost out of time. You're actually over time. So let's let Ms. Rockmore have her rebuttal time. Thank you. Thank you. If I may. There was a couple things that were brought up and I think the court is starting to really hone in to the issue. One thing is this group of people under Roman numeral 2 I do want to point out to the court that even the Department of Defense and the Army regulations do look at this blended force. And I'm going to point to a couple documents The Army regulation 715-9 which is found at Appendix 346 deals with providing overall supervision for manpower reserve affairs across the Army components. And they define Army components as active Army guard reserve civilian and contractors. Another citation where the Department of Defense kind of recognizes this blended force at least for purposes of immunization and pre-deployment health assessment they define DOD personnel as military civilian and contractors. So there is some recognition of this blended force by our United States government. When we're talking about a bright line rule and that employees should be Does the act define what are trusted territories? I have not seen any definition of trusted territories. I would have to concede to the court that the eligibility statute is not well defined and therefore again there's a lot of ambiguity that needs interpretation. Well the government suggested that if Mr. Griffin had returned to the United States under Prong 3 within six months that he would have then had eligibility for a claim. If I understand the facts right the petitioner actually went within six months to the Philippines in order to receive treatment for his illness and I'm wondering because Prong 3 doesn't just say return to the United States I think it says United States or a trusted territory. So I'm wondering if the Philippines is a trusted territory. I don't know what trusted territory means. I would think Puerto Rico would qualify but I don't know. Guam maybe? What about the Philippines? I don't know the answer to that question. Me neither. I wish I did. What I can say is that he didn't just travel there on his own will. He was airlifted because he did have Guillain-Barre and that is a very serious injury. I think I might have been reading it wrong. It says if he received a vaccine outside the United States or a trusted territory it then says he has to go back to the U.S. not later than six months. It doesn't say U.S. or trusted territory within six months. So I guess the Philippines is quite clearly not the U.S. I think I may have gotten that one wrong. But I would like to at least address the court that what if he could not come back in six months and that indeed is the case. He was still being treated long after, not long after, but by the time the six months had left, which I believe was in June or July, he was still being treated in August. So he was, it's not as if he could have just returned. And in fact, you know, how does someone find out about this vaccine program? How does one connect the dots that this vaccine program even exists, which is very difficult to find out for many people, but then in addition to have to return within six months of receipt of the vaccine. And when you go to even the website, the secretary under 300 AA-10 has a responsibility to make reasonable efforts to make this program known. And even if you go to the website, even if you find out that the vaccine caused Guillain-Barré and then that there is this vaccine program, you have to then find out if you're outside of the country that you must return in six months, even though you're still being treated. So how do you find out? Okay, maybe you're able to access a computer in the Philippines or in Afghanistan. Ms. Rockmore, your time is up. If you have a final thought, please go ahead. Your Honors, at minimum equity should be if you disagree with the interpretation that we have provided, at minimum equity like that which was defined in the newest United States Supreme Court case in Wong, when they looked at a six-month statute and a two-year statute under the Federal Tort Act and basically found that mere claims, that this is a mere claims processing rule subject to equitable tolling. So at minimum we would argue for equity. Thank you very much. I thank both counsel for their argument. The case is taken under your